IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

JAMES R. HUGGINS                                                                PLAINTIFF

v.                                Civil No. 09-3019

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                              DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, James Huggins, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"), 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.     Procedural Background**

The plaintiff filed his applications for DIB and SSI on May 16, 2005, alleging an onset date of May 8, 2004, due to degenerative disk disease/degenerative joint disease, leg craps, shoulder pain, headaches, blurry vision, and depression. (Tr. 88-89). Following denials of his application at the initial and reconsideration levels, Plaintiff then made a request for a hearing by an Administrative Law Judge (ALJ). An administrative hearing was held on June 19, 2007. (Tr. 424-461). Plaintiff was present and represented by counsel.

At this time, plaintiff was 52 years of age and possessed the equivalent of a high school education with some military experience. (Tr. 428). He had past relevant work ("PRW") experience as a truck driver. (Tr. 56-79, 80-87, 428-431).

On February 29, 2008, the ALJ found that plaintiff's degenerative disk disease was severe, but did not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. (Tr. 15). After partially discrediting plaintiff's subjective complaints, the ALJ determined that plaintiff retained the residual functional capacity to perform medium work involving only occasional stooping, bending, and crouching. (Tr. 16). With the assistance of a vocational expert, the ALJ found plaintiff could still perform work as a truck driver. (Tr. 20).

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on January 30, 2009. (Tr. 4-6, 8-9). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned by consent of the parties. Both parties have filed appeal briefs, and the case is now ready for decision. (Doc. # 6, 9).

**II.    Applicable Law**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have

2

decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

    A.    **The Evaluation Process**:

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and

work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**

Of particular concern to the undersigned is the ALJ's RFC assessment. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Records before this court indicate that plaintiff injured his back while unloading his semi-truck in May 2004. (Tr. 433). On May 7, 2004, plaintiff sought treatment. He stated that he had pulled a muscle in his back while making a delivery. (Tr. 211-218, 283-291). Plaintiff reported feeling a pop in his right lower back and also noticed a painful knot around his umbilicus. Dr. Dennis Estep noted that plaintiff walked with an antalgic gait and was very slow in movement. He had very diminished motion associated with flexion/extension of the spine to only ten degrees. The plaintiff's heel and toe walk was diminished and he exhibited a negative straight

4

leg raise test. His right side exhibited increased discomfort with internal/external rotation of his right hip. An examination of his abdominal wall revealed a defect on the superior aspect of the umbilicus that was tender to palpation. He was also tender in the right lower quadrant. X-rays of his lumbosacral spine revealed no fractures or abnormalities. (Tr. 212). Dr. Estep diagnosed plaintiff with lumbar strain, sacroiliac ("SI") strain, and an umbilical hernia. He recommended that plaintiff see a surgeon for evaluation of his hernia. Dr. Estep prescribed Lorcet Plus, a Medrol Dosepak, and Flexeril. He allowed plaintiff to return to work but advised him not to lift or push/pull any weight greater than ten pounds; to alternate sitting, standing, and walking every 15-20 minutes; and to avoid over-the-road driving. (Tr. 211).

On May 25, 2004, the numbness and discomfort radiating from plaintiff's back down to his legs had improved. (Tr. 196-197, 199-200, 281-282). Plaintiff walked with a minimal antalgic gait. However, he was favoring his left lower extremity. Dr. Estep advised plaintiff to begin formal physical therapy. He indicated that plaintiff could work with no lifting or pushing/pulling greater than ten pound, no climbing, limited bending, and no over the road driving. Dr. Estep prescribed Soma, Darvocet, and Vioxx and advised plaintiff that seeking chiropractic treatment would be acceptable at this point in his recovery. (Tr. 197).

On June 2, 2004 plaintiff underwent a physical therapy evaluation. (Tr. 237-238). Andy Tiner noted palpable muscle spasms in the right lumbar paraspinals and into the thoracic region. However, range of motion was not assessed, as plaintiff had recently undergone double hernia surgery. Plaintiff was independent, but very guarded in all movements, especially with table transfers. Mr. Tiner assessed plaintiff with lumbar strain and indicated that plaintiff would be

5

treated via MHP and interferential electrical muscle stimulation with lumbar extension strengthening and abdominal strengthening. (Tr. 237-238).

On June 8, 2004, plaintiff was seen for lumbar strain, SI strain, and status post umbilical hernia repair. (Tr. 194-195, 278-279). Plaintiff was doing better, but still having discomfort and difficulty sleeping more than an hour or two at a time. Plaintiff had been using Darvocet, stating that some days he did not have to take it at all and other days took four to five due to the pain in his umbilicus. He denied discomfort in his sacrum. Dr. Estep noted that plaintiff walked with little difficulty, and his flexion and extension continued to be somewhat limited. He advised plaintiff to continue physical therapy, hold the Vioxx until they could determine if his bloody cough improved, prescribed Amitriptyline to help him sleep, and gave him a refill of Darvocet. Dr. Estep also advised plaintiff against lifting or pushing/pulling greater than ten pounds, over the road driving, and climbing. He indicated that he would see plaintiff back in two weeks and that if he did not see significant improvement he would consider further radiographic evaluation. (Tr. 194-195).

On June 22, 2004, plaintiff stated that the medication seemed to be working quite well. (Tr. 192-193, 276-277). He had been taking one to three pain medications on a routine basis and Amitriptyline at bedtime. Plaintiff stated that his therapist had been doing some gentle stretches and ultrasound. However, the therapist had not advanced him in activity because he continued to complain of discomfort in his abdomen when they tried to do so. Dr. Estep indicated that he had not yet seen any of the treatment notes from plaintiff's therapist. On examination, plaintiff was mildly tender associated with the mid-lumbar area. Flexion was limited to 45 degrees, extension was to 25 degrees with minimal difficulty, and plaintiff had diminished flexion and

diminished plantar flexion on the right as compared to the lft. His straight leg raise was negative and he was able to heel walk and toe walk without difficulty. Dr. Estep diagnosed him with lumbar strain, SI strain, and status post umbilical hernia. He advised him to continue therapy to progress to reconditioning, continue his medication management and regimen, continue no lifting or pushing/pulling greater than 20 pounds, and no over the road driving. Dr. Estep also recommended that the therapist continue progressing with him. (Tr. 192-193).

Physical therapy continued until July 13, 2004, when plaintiff was taken off of therapy for failure to attend his scheduled sessions. (Tr. 190, 232, 234, 299).

On August 30, 2005, plaintiff underwent a general physical examination. (Tr. 253-259). Plaintiff stated that he had injured his back while unloading a truck in 2004 and had also undergone surgery to correct an umbilical hernia. He also reported being diagnosed with glaucoma. Plaintiff indicated that he could take care of himself, drive a care, help with household chores, and walk two to three blocks. He described lower back pain as being his main problem, but admitted that he did not have a family physician. An examination revealed a slightly limited range of motion in his lumbar spine and a decreased range of motion in his shoulders, hips, and knees. The doctor noted that plaintiff "carried on as if any further movement was very painful in the shoulders, hips, and knees." He also "carried on as if his abdomen was very painful and tender." Plaintiff was able to hold a pen and write, touch fingertips to palm, grip, oppose thumb to fingers, pick up a coin, stand and walk without assistive devices, walk on heel and toes, and squat and arise from a squatting position. X-rays of his lumbar spine showed normal lumbar lordosis. The disk spaces were intact. As such, plaintiff was diagnosed with lower back pain, abdominal pain status post hernia repair, and glaucoma.

The doctor stated that he had limitation of movements of the shoulders, hips, knees, lower back, and abdomen. He also fell to his left side during the Romberg test. However, the doctor felt plaintiff was malingering. (Tr. 253-259).

It appears that plaintiff began receiving medical assistance through the Veteran's Administration in 2007. A primary care note dated June 21, 2007, reveals that plaintiff was suffering from numbness in his hands at the C8-T1 distribution. (Tr. 339-340). He also reported a three year history of abdominal pain following ventral hernia repair and depression since injuring his back in 2004. Plaintiff was diagnosed with degenerative joint disease, obesity, H. Pylori based on positive AB and vague abdominal pain with suspected nerve entrapment status post ventral hernia repair, glaucoma, and macular degeneration per history. Dr. Irving Kuo's nurse, Michael Springer advised plaintiff to continue his medications. (Tr. 339-340).

On June 22, 2007, an MRI of plaintiff's cervical, lumbar, and thoracic spine revealed a small diffuse disk bulge and osteophyte complex at the L5-S1 level with mild diffuse disk bulges at the L2-3, L3-4, and L4-5 levels along with mild facet and ligamentous hypertrophy. (Tr. 328-329, 366-370). Tiny paracentral disk protrusions were noted at the T7-8 and T10-11 levels, along with small diffuse disk protrusions at the C3-4 and tiny protrusions at the C4-5 and C5-6 levels. There was also mild scoliosis and epidural lipomatosis in the lumbar spine at the L5 level and sacrum canal. (Tr. 328-332). Nerve conduction studies revealed evidence of C8 level radiculopathy. (Tr. 337-338, 344-346, 397-398, 402-404).

On July 19, 2007, plaintiff complained of mid-to-lower back and stomach pain, but indicated that Tramadol helped ease his back pain. (Tr. 408-411). He stated that he was taking four to eight of them per day. Plaintiff also indicated that prolonged sitting, lying, and standing

made his pain worse, and rated his current pain as a six on a ten-point scale. His active medications included Albuterol, Citalopram Hydrobromide, Methocarbamol, Naproxen, Omeprazole, Simvastatin, Tramadol HCL, and Travoprost. Plaintiff was assessed with degenerative joint disease/disk protrusion in the cervical and thoracic spine, spondylosis of the entire spine, and radiculopathy. He was referred for occupational therapy for his hand and for possible ulnar nerve release. (Tr. 408-411).

On October 4, 2007, plaintiff participated in a chronic pain education and management program. (Tr. 382).

On October 16, 2007, plaintiff was unable to go to the Little Rock VA pain clinic due to severe back pain. (Tr. 421-423). He requested a TENS unit. An examination reveled a bilateral straight leg raise to 20 degrees with lower back pain. Plaintiff was diagnosed with osteoarthritis, obesity, degenerative joint disease, depressive disorder, tobacco use disorder, and glaucoma. For his chronic back pain, plaintiff was referred to physical therapy for four weeks and for a TENS Unit. He was also prescribed Darvocet and Robaxin to take as needed. (Tr. 4201-423).

While we note that plaintiff did not seek consistent treatment early on and preliminary x-rays did not reveal a significant problem, we are concerned that the ALJ seems to have disregarded the MRI results dated June 2007. Although she acknowledges that he underwent MRI's, she characterizes the results as revealing only "tiny and small sized disk protrusions in the cervical spine and thoracic spine." (Tr. 17, 18). She does not, however, discuss the fact that there were numerous protrusions, the facet and ligamentous hypertrophy, the bulging disks, or the mild scoliosis and epidural lipomatosis in the lumbar spine at the L5 level and sacrum canal. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore

9

medical evidence, rather must consider the whole record). The ALJ also failed to consider the nerve conduction tests that revealed radiculopathy. *Id*. Further, she stated that plaintiff had never been referred to a pain specialist and seemed to have his pain well controlled via medication. We note, however, that plaintiff did go to the VA pain management clinic on at least one occasion and that the only medication reported to impact plaintiff's pain was Tramadol, a narcotic-like pain medication used to treat moderate to severe pain. *Id.* He was also prescribed the narcotic pain medication Darvocet, along with muscle relaxers. Given this evidence, it is simply not clear to the undersigned the exact limitations plaintiff's back condition would place on his ability to perform work-related activity. Accordingly, we can not say that substantial evidence supports the ALJ's RFC determination.

We also note that the only RFC assessment contained in the file was completed on September 28, 2005, by Dr. Ron Crow, a non-examining, consultative physician. (Tr. 261-262). After reviewing plaintiff's medical records, he concluded that plaintiff's physical impairment was non-severe. (Tr. 261-262). Given that Dr. Crow did not have the benefit of reviewing plaintiff's 2007 MRI results, we believe that a more recent assessment was necessary before the ALJ could accurately assess plaintiff's RFC. Accordingly, on remand, the ALJ is directed to send plaintiff for a consultative physical examination and to request that the doctor completing the examination complete a physical RFC assessment form to be made part of the record. *See McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982)(en banc) (holding that the most important issue in a disability determination is the issue of residual functional capacity).

## IV. Conclusion

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 8th day of April 2010.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)